IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FILED
August 4, 2006

CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| JOHN H. GARNER | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action 3:05-cv-1029-R |
| | § | |
| MBNA AMERICA BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court are defendant MBNA's Motion for Summary Judgment and Motion to Confirm Arbitration Award (Dkt No. 16) and plaintiff John Garner's Motion to Compel (Dkt. No. 9 & 19). As discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** MBNA's motion and **DENIES** Garner's Motion to Compel.

### I. BACKGROUND

This case arises out of a billing dispute between plaintiff John H. Garner and defendant MBNA America Bank, N.A. ("MBNA") concerning a line of credit. The parties entered into a written agreement whereby MBNA would open a line of credit for Garner in exchange for his promise to pay monthly billings. MBNA claims that written agreement expressly stated that any disputes concerning amounts owed would be resolved through binding arbitration.[1] Garner claims that no such agreement existed.[2] Eventually a billing dispute arose between the parties, and, on

---

[1] As evidence of the agreement between it and Garner, MBNA has submitted a copy of a form contract containing an arbitration clause and an accompanying affidavit by its custodian of records. (*See* Def.'s Ex. A, C).

[2] Garner's only proof is a recital in his affidavit which states that "[the] original agreement recieved did not have any clause or provision that allowed Defendant to submit any dispute to arbitration." (Garner Aff. at 1 ¶4).

1

September 3, 2004, MBNA filed suit in the National Arbitration Forum.[3]

Ultimately, on January 14, 2005, the arbitration panel found in favor of MBNA and awarded the company $23,777.69 plus interest. (*See* Def.'s Ex. B).[4] Garner received notice of the award on January 14, 2005 and filed suit to vacate the arbitration award in state court on April 6, 2005. (Garner Aff. ¶¶13-14; Dkt No. 1). In his lawsuit, Garner alleges that MBNA's act of referring the dispute to arbitration constituted a breach of contract and violated his rights to due process. Additionally, Garner claims that MBNA violated the federal Truth-in-Lending Act, 15 U.S.C. §1601 *et seq*, by failing to respond to a billing inquiry about his December 2003 statement of account.

## II. ANALYSIS

MBNA has now moved to confirm the arbitration award and for summary judgment on Garner's claims. The Court will first review MBNA's motion to confirm the arbitration award before proceeding to the merits of Garner's TILA and due process claims.

### A. **Summary Judgment Standard**

A court may enter summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact in the case and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477

---

[3] Neither party has specified what billings were disputed, much less the date on which the dispute arose.

[4] In a fateful attempt at zealous advocacy, MBNA's motion *repeatedly* misstates that the arbitration award was entered on January 14, *2004*. For example, early in its briefing, Defendant states:

> On January 14, 2004, an arbitration award was entered in favor of Defendant in the amount of $23,777.69. (Appendix p.7, Exhibit "B"). The award was sent to Plaintiff on that day. Plaintiff failed to timely file a motion to vacate, modify, or correct the arbitration award upon MBNA on or before April 14, 2004 (not later than 90 days of the award).

Def.'s Mot. at 2 (verbatim). This argument is made repeatedly throughout their briefing. In reality, the documentary evidence attached to their motion reveals that the award was rendered on January 14, *2005*. (Def.'s Ex. B). As explained, *infra*, the difference in dates has a profound impact on the Court's analysis. (Nice try.)

U.S. 317, 322, (1986); *Melton v. Teachers Ins. & Annuity Ass'n of Am.*, 114 F.3d 557, 559 (5th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; *Lynch Properties, Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). Where the non-movant bears the burden of proof on a claim upon which summary judgment is sought, the movant may also discharge its initial burden by showing that there is an absence of evidence to support the nonmoving party's case. *See Celotex*, 477 U.S. at 325. Once the movant has met its initial burden, the non-movant must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431-32 (5th Cir. 1998). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

When weighing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988); *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 640 (5th Cir. 1985). As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 (1986). While all of the evidence must be viewed in a light most favorable to the nonmovant,

neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's summary judgment burden. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

### B.      MBNA's Motion to Confirm the Arbitration Award

The Federal Arbitration Act ("FAA") permits a party who has received a favorable arbitration award to file a motion to confirm the arbitration award in federal court. *See* 9 U.S.C. §9 (West 2005).[5]  A proceeding to confirm an arbitration award under 9 U.S.C. §9 is a summary proceeding and "confirmation can only be denied if [the] award has been corrected, vacated, or modified in accordance with the [FAA]." *Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc.*, 2003 WL 22056220 *2 (N.D.Tex. 2003) (citing *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986)).  A party wishing to vacate, modify, or correct an arbitration award must serve notice upon its adverse party or attorney within three months after the award was filed or delivered.  9 U.S.C. §12.  A party who fails to timely serve of notice of such a motion forfeits his or her right to seek judicial review of the award. *Allied Van Lines*, 2003 WL 22056220 *2-3 (citing, *inter alia*, *Lander Co., Inc. v. MMP Inv., Inc.*, 107 F.3d 476, 478 (7th Cir.), *cert. denied*, 522 U.S. 811 (1997) and *Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 863 F.2d 851, 854 (11th Cir.), *cert. denied*, 490 U.S. 1107 (1989)).

#### 1.      Garner Timely Moved to Vacate the Award

In its briefing, Defendant argues that the arbitration award was entered on January 14, 2004 and that Garner's filed his lawsuit more than a year later on April 6, 2005. (See Def.'s Mot. Br. at

---

[5] The disputed agreement between Garner and MBNA contains a choice of law provision in favor of the FAA.  *See* Def.'s Ex. A ("This arbitration agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act.  9 U.S.C. §§1-16.").  Even if the Court's analysis In any event, the

4

8). Yet, a glance at the Defendant's own evidence shows that the arbitration award was rendered on January 14, 2005 – not 2004. *See* Def.'s Ex. B (copy of arbitration award). After receiving notice of the award, Garner filed a timely action to vacate the arbitration award on April 6, 2005, well within the three-month deadline imposed by §12. Accordingly, the Court finds that Garner's challenge to the arbitration award was timely.

### 2. Garner Waived Any Objection to Arbitrability

Because the Court has found Garner's challenge to be timely, it must now determine if Garner agreed to arbitrate his billing disputes with MBNA or, alternatively, if he waived any right to object to the arbitrability of his dispute by participating in the arbitration proceeding.

Garner contends that he never agreed to submit any dispute with MBNA to arbitration. However, even if the Court were to assume that he never agreed to arbitrate any dispute with MBNA, the evidence before the Court reveals that Garner waived any right to object to the arbitrability of the dispute by voluntarily submitting to arbitration and participating at arbitration. Under the FAA, the proper procedure for a party to challenge whether it is subject to an arbitration agreement is to move the court for a stay of arbitration. *Mays v. Lanier Worldwide, Inc.*, 115 F.Supp.2d 1330, 1342-43 (M.D.Ala. 2000) (quoting *Halley Optical Corp. v. Jagar Int'l Mktg. Corp.*, 752 F.Supp. 638, 639 (S.D.N.Y.1990)). A party who fails to do so and impliedly consents to the arbitration by his or her conduct waives any right to subsequently challenge its arbitrability in court. *See, e.g., Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 368 (2d Cir. 2003); *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 685 (2d Cir. 1996).

Garner has offered no competent summary judgment evidence showing that he preserved his objection by formally objecting to the proceeding. *Cf. Opals On Ice Lingerie*, 320 F.3d at 368

5

(where court denied party's motion to stay arbitration and party repeatedly objected to arbitration through its counsel and in correspondence between the parties during arbitration, party did not waive its right to object to arbitrability, despite the panel's adverse finding on the question of arbitrability); *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000) ("If, [at arbitration], a party clearly and explicitly reserves the right to object to arbitrability, his participation in the arbitration does not preclude him from challenging the arbitrator's authority in court."). Rather, the summary judgment evidence before the court indicates that Garner voluntarily submitted to arbitration, arbitrated his dispute to completion, and subsequently filed suit to vacate the award. As a result, Garner cannot now challenge the arbitration award on grounds that he never agreed to arbitrate any dispute with MBNA. That argument was available to him before he chose to appear at and participate in the arbitration.

For the Court to rule to the contrary would permit Garner a second opportunity to challenge the amounts that MBNA claims he owes – essentially, a second bite at the apple after he took his chances at arbitration. Such a result would be wasteful and unfair to MBNA. *See, e.g., Pike v. Freeman*, 266 F.3d 78, 89 (2d Cir. 2001) ("Arbitration is not a trial run in which a party may sit quietly by without raising pertinent issues, wait to see if the result is in his favor and then seek judicial relief as an afterthought...."); *International Longshoremen's Ass'n v. West Gulf Maritime Ass'n*, 594 F.Supp. 670, 674 (S.D.N.Y. 1984) ("One who voluntarily participates in arbitration will not thereafter be heard to complain that the arbitrator was without authority to act.").

### 3.    **MBNA is Entitled to Confirmation of the Award**

The Court must now determine if the arbitration award should be confirmed. Arbitration awards are subject to considerable deference, and judicial review of an arbitration award is

extraordinarily narrow. *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 349 (5th Cir. 2004); *Gulf Coast Indus. Worker's Union v. Exxon Co.*, 70 F.3d 847, 850 (5th Cir.1995). The only statutory grounds upon which a reviewing court may vacate an arbitrative award are contained in 9 U.S.C. §10. Section 10 permits vacatur in several narrow instances, including where "the award was procured by corruption, fraud, or undue means" or "where the arbitrators exceeded their powers." *See* 9 U.S.C. § 10(a).

Plaintiff's only objection to confirmation of the award is that he never consented to arbitration. Yet, the Court has already found that he waived this objection and is thereby estopped from challenging the award on those grounds. Additionally, Garner has not presented any evidence that would raise a genuine issue of material fact on any of the grounds for vacatur under §10. Accordingly, the relevant confirmation statute, 9 U.S.C. §9, requires that the arbitration award be confirmed in favor of MBNA.

### C.    Garner's Breach of Contract Claim

To the extent that Garner claims that submitting the dispute to arbitration breached his contract with MBNA, he has also waived any such claim for the reasons stated above. In Texas, waiver is an intentional relinquishment of a known right and may be indicated by conduct that is inconsistent with an intent to claim the right. *See Cal-Tex Limber Co. v. Owens Handle Co.*, 989 S.W.2d 802, 812 (Tex.App.–Tyler 1999, no pet.). Moreover, a non-breaching party may affirm a contract that has been breached – thereby waiving the breach – by either (1) evincing a conscious intent to do so or (2) acting so as to induce the other party's detrimental reliance, thereby giving rise to a claim of estoppel. *See Consolidated Engineering Co. v. Southern Steel Co.*, 699 S.W.2d 188, 191 (Tex. 1985) (citation omitted).

Although Garner claimed that he never agreed to arbitrate any disputes with MBNA, he nevertheless appeared before the arbitration panel and acquiesced to the panel's authority over the dispute. This conduct is inconsistent with his claim that MBNA breached their contract by asking him to submit to arbitration. If Garner believed that he had never agreed to arbitrate the dispute, he should have filed a breach of contract action or sought a stay of the proceeding before willingly participating. He cannot now raise a breach of contract action on these grounds after participating in the arbitration to its final resolution. For these reasons, the Court finds that Garner's conduct waived any right to assert a breach of contract claim, which, therefore, entitles MBNA to summary judgment on that claim.[6]

### D.  Garner's Truth-in-Lending Act Claim

The Truth-in-Lending Act, 15 U.S.C. §§1631 *et seq.*, is remedial legislation intended to protect consumers, and courts have liberally construed its provisions in their favor. *See McGowan v. King, Inc.*, 569 F.2d 845, 848 (5th Cir. 1978); *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir. 1998); *Kurz v. Chase Manhattan Bank*, 273 F.Supp.2d 474, 477 (S.D.N.Y. 2003). The Fair Credit Billing Act ("FCBA"), 15 U.S.C. §§1666-1666j, is enforced by the Truth-in-Lending Act and sets-forth procedures through which a debtor and creditor may resolve disputes arising from alleged billing errors in statements of account.

The FCBA requires a debtor to provide written notice of a disputed billing within 60 days of receiving the challenged statement. *See* 15 U.S.C. §1666(a) (describing deadlines, obligations,

---

[6] Garner has filed a motion to compel certain discovery responses from MBNA concerning whether he ever agreed to arbitrate disputes with the bank (Dkt Nos. 9 & 19). Because the matters at issue in Garner's motion to compel only pertain to his claims pertaining to the arbitration award – which have now been dismissed – the motion will be denied.

and proper contents of notice of billing error).[7] If an adequate and timely notice is made, the creditor must send a written acknowledgment that it has received the notice within 30 days of receipt. 15 U.S.C. §1666(a)(A); *American Express Co. v. Koerner*, 452 U.S. 233, 235-37 (1981). In addition, the creditor must investigate the matter and either make timely corrections in the consumer's account or – before making any attempt to collect the disputed amount – send a timely written explanation of its belief that the original statement was correct. 15 U.S.C. §1666(a)(B); *Koerner*, 452 U.S. at 235-37. In all cases, the creditor must rectify the consumer's account or explain its belief that the original statement was correct by the earlier of 90 days of receiving notice or two full billing cycles. 15 U.S.C. §1666(a)(B); *Burnstein v. Saks Fifth Ave. & Co.*, 208 F.Supp.2d 765, 776 (E.D.Mich. 2002).

A creditor who fails to comply with the FCBA "forfeits" any right to collect the first $50 of the disputed amounts and any finance charges that have accrued thereon. 15 U.S.C. §1666(e). More significantly, a creditor who fails to meet these requirements will be subject to damages under TILA. *See* 15 U.S.C. §1640.[8] Any such action must be brought within one year from the date that the

---

[7] Regulation Z of the Federal Reserve Bank, 12 C.F.R. § 226.13, governs implementation of the FCBA. Regulation Z specifies that the 60-day period for filing a notice of dispute under the FCBA begins to run "after the creditor [has] transmitted the *first* periodic statement that reflects the alleged billing error." 12 C.F.R. §226.13(b)(1) (emphasis added); *Pinner v. Schmidt*, 805 F.2d 1258, 1264 (5th Cir. 1986), *cert. denied*, 483 U.S. 1022, 1032 (1987) (ruling that the 60-day notice period begins to run "when a disputed statement is first received").

A consumer forfeits his or her rights under §1666(a) by failing to provide a creditor with notice of a billing error within 60 days of receiving the first statement reflecting the alleged error. *See Dawkins v. Sears Roebuck & Co.*, 109 F.3d 241, 243 (5th Cir. 1997) (per curiam). If the consumer sends an untimely notice of error after the 60-day window has lapsed, the creditor is not required to investigate the disputed amounts, and §1666 is not violated if the creditor refuses to do so. *Id.* In those situations, the statute of limitations is not tolled by the creditor's failure to investigate since the creditor "is not, and has never been in violation of §1666. *Id.* Despite recognizing this potential defense in its reply brief (see Def.'s Reply at 3 n.1), Defendant does not allege that the alleged billing errors in Garner's December 2003 statement had been previously billed to him more than 60 days prior to his notice of billing error.

[8] Section 1640 governs the award of damages for TILA violations. In relevant part, it provides that "any creditor who fails to comply with any requirement imposed under this chapter [15 U.S.C. §§ 1631 *et seq.*]... is liable to such a person in an amount equal to the sum of... (1) any actual damage sustained by such person as a result of the failure; (2)(A)(I) in the case of an individual action twice the amount of any finance charge in connection with the

violation occurred. 15 U.S.C. §1640(e); *Kelley v. Galveston Autoplex*, 196 F.R.D. 471, 477 (S.D.Tex. 2000); *Rodrigues v. Members Mortgage Co., Inc.*, 323 F.Supp.2d 202, 210 (D.Mass. 2004).

In its motion for summary judgment, MBNA's argues that Garner's FCBA/TILA claim was filed outside the one-year statute of limitations. Because it allegedly received Garner's notice of disputed billing on January 15, 2004, MBNA argues that Garner more than one year before suit was filed on April 6, 2005. (*See* Def.'s Mot. Br. at 5). In response, Garner maintains that his TILA claim is viable and that the one year statute of limitations began to run on September 3, 2004 – the date on which MBNA filed a claim in the National Arbitration Forum to collect on his debts. (Pl.'s Resp. Br. at 5).

As noted above, the FCBA requires that a creditor provide written acknowledgment within 30 days after receiving notice of a claimed billing error, *see* 15 U.S.C. § 1666(a)(A), and that the creditor must resolve the billing dispute within 90 days after receiving notice of the dispute or two full billing cycles, *see* 15 U.S.C. §1666(a)(B). Garner allegedly sent his notice of billing error regarding the December 2003 statement on January 12, 2004. (Garner Aff. ¶10). In its briefing, MBNA assumes for the sake of argument that it received the notice "on or about January 15, 2004." (*See* Def.'s Mot. Br. at 5). Therefore, it follows that MBNA was required to acknowledge the disputed billings on or before February 15, 2004 and to resolve the disputes by the *earlier* of April 15, 2004 or two full billing cycles. Accordingly, Garner's FCBA claims, if any, arose on these two dates, and he must have filed suit on those violations within a year of those dates to withstand summary judgment for lapse of the limitations period. *See Burnstein*, 208 F.Supp.2d at 776.

---

transaction...." 15 U.S.C. §1640(a). Violations of the FCBA are within the scope of §1640.

Because this lawsuit was filed on April 6, 2005, Garner is barred by the statute of limitations from asserting a TILA claim based on MBNA's failure to acknowledge his notice of disputed billing. That claim should have been filed by February 15, 2005, one year after the 30-day acknowledgment period expired. Similarly, for the reasons previously discussed in parts II.B&C, Garner's willing participation in the arbitration proceeding estops him from claiming that MBNA violated the Truth-in-Lending Act by submitting their dispute to arbitration.

In any event, a genuine issue of material fact remains as to whether Garner has filed a filed a timely claim arising from MBNA's failure to take corrective action on his disputed billing. Based on the minimal evidence before the Court, that claim would have accrued at the *earlier* of April 15, 2004 or two full billing cycles from January 15, 2004. As the movant, it is MBNA's burden to show that no material issue of fact exists on its statute of limitations defense. *See Celotex*, 477 U.S. at 323. It has failed in this regard. MBNA has not presented any evidence to show the calendar date at which when two complete billing cycles had run prior to April 6, 2005. It has also not presented any evidence to suggest that the amounts that Garner disputed were reflected statements issued prior to December 2003, despite recognizing such a possibility in its reply brief (see note 7, *supra*). For that reason, the Court finds that MBNA is not entitled to summary judgment on Garner's claim that it failed to take corrective action on his disputed billing in violation of the FCBA.

    E.    **Garner's Due Process Claim**

Garner claims that MBNA's actions and the actions of the arbitrators violated his constitutional rights to due process. Upon closer scrutiny, Garner fails to state a claim on this ground since private parties are not subject to constitutional liability on due process claims. *See Downs v. Liberty Life Assurance Co. of Boston*, 2005 WL 2455193 *5 (N.D.Tex. 2005) ("[T]he

11

Constitution's guarantee of procedural due process applies only to state action, not private conduct.") (citing *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 196 (1989)); *Mantle v. Upper Deck Co.*, 956 F.Supp. 719, 734 (N.D.Tex. 1997) (holding that "private arbitrators" are not state actors).  Accordingly, the Court *sua sponte* dismisses Garner's due process claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### III.  CONCLUSION

For the reasons stated above, the Court enters the following rulings:

1. MBNA's motion to confirm the arbitration award is **GRANTED**.  The arbitration award issued on January 14, 2005 is hereby **CONFIRMED**.

2. MBNA's motion for summary judgment on Plaintiff's breach of contract claim is **GRANTED**.

3. MBNA's motion for summary judgment on Plaintiff's Truth-in-Lending Act Claim is **DENIED**.

4. Garner's procedural due process claim is **DISMISSED** for failure to state a claim.

5. Garner's motion to compel (Dkt. No. 9 & 19) is **DENIED**.

**IT IS SO ORDERED**

**ENTERED: August 4, 2006**

_____
**HON. JERRY BUCHMEYER**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**