IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN H. GARNER | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No.  3:05-CV-1029-R |
| | § | |
| MBNA AMERICA BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Now before the Court is Defendant MBNA America Bank's Second Motion for Summary Judgment (Dkt. No. 69). After careful consideration of all parties' submissions and the applicable law, Defendant MBNA America Bank's Second Motion for Summary Judgment is **DENIED**.

**I.  Background**

This case concerns a billing dispute regarding a line of credit between Plaintiff, John H. Garner and Defendant, MBNA America Bank, N.A. (MBNA). Mr. Garner sued MBNA alleging violations of the Truth in Lending Act, procedural due process violations, and breach of contract.

The parties entered into a written agreement whereby MBNA opened a line of credit for Garner and Garner promised to pay monthly billings. MBNA claims that the written agreement expressly stated that any disputes concerning amounts owed would be resolved through binding arbitration. Garner claims that no such agreement existed. Eventually a billing dispute arose between the parties, and, on September 3, 2004, MBNA filed suit in the National Arbitration Forum.

1

Ultimately, on January 14, 2005, the arbitration panel found in favor of MBNA and awarded the company $23,777.69 plus interest. (Dkt. No. 67, Exhibit X). Garner received notice of the award on January 14, 2005, and filed suit to vacate the arbitration award in state court on April 6, 2005. (Garner Aff. ¶¶13-14; Dkt No. 1).

On April 6, 2005, Garner filed suit against Defendant for violations of his procedural due process rights, the Truth in Lending Act, and breach of contract. (Dkt. No. 1, Exhibit A) On August 4, 2006, the Court dismissed Garner's procedural due process and breach of contract claims. (Dkt. No. 46). The only remaining claim is the alleged violation of the Truth in Lending Act, 15 U.S.C. § 1601, et seq., for MBNA's failure to respond or take corrective action regarding a billing inquiry Garner made about his December 2003 statement of account.

On December 19, 2006, MBNA moved for summary judgment as a matter of law on Garner's remaining claim. (Dkt. No. 69). MBNA argues that Garner did not send a letter inquiring about a billing error and even if he did, based on his deposition testimony, his letter failed to meet the statutory requirements of the Truth in Lending Act. Further, MBNA argues that the statute of limitations bars this suit.

## II. Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate under Rule 56 (c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact in the case and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986); *Melton v. Teachers Ins. & Annuity Ass'n of Am.*, 114 F.3d 557, 559 (5th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those

portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). Where the non-movant bears the burden of proof on a claim upon which summary judgment is sought, the movant may also discharge its initial burden by showing that there is an absence of evidence to support the nonmoving party's case. *See Celotex*, 477 U.S. at 325. Once the movant has met its initial burden, the non-movant must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431-32 (5th Cir. 1998). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

When weighing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988); *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 640 (5th Cir. 1985). "[A] court 'should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses.'" *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 492 (5th Cir. 2001) (quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 151 (2000)) (emphasis added). "Credibility determinations, the weighing of the evidence, and drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). As long as there

appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

Because Garner is proceeding *pro se*, the Court must construe the allegations in the complaint liberally. *Hughes v. Rowe,* 449 U.S. 5, 9 (1980) (per curiam). The Court has an obligation to construe *pro se* plaintiffs' briefs more permissively and to make more allowances, and *pro se* litigants are subject to less stringent standards than litigants who are represented by counsel. *Id.* Therefore in deciding Defendant's Second Motion for Summary Judgment, the Court has given Garner's complaint, response and evidence the indulgent reading the law requires.

### B.  Billing Error Notice Requirements under the Truth in Lending Act

The Fair Credit Billing Act (FCBA), 15 U.S.C. §§ 1666-1666j, enforced by the TILA, establishes dispute resolution procedures for debtors and creditors. Under the FCBA, a debtor must provide written notice of a disputed billing within sixty days of receiving a challenged statement. 15 U.S.C. § 1666(a). Regulation Z, 12 C.F.R. § 226.13, governs the implementation of the FCBA, clarifies the start of the sixty-day period for filing a notice stating that the period begins to run "after the creditor [has] transmitted the first periodic statement that reflects that alleged billing error." 12 C.F.R. § 226.13 (b)(1). Basically, the sixty-day period begins to run "when a disputed statement is first received." *Pinner v. Schmidt*, 805 F.2d 1258, 1264 (5th Cir. 1986). Under section 1666(b), a billing error includes "(2) A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof." 15 U.S.C. § 1666(b)(2). The notice must (1) enable the creditor to identify the name and account number of the obligor, (2) indicate the obligor's belief that the statement contains a billing error, and (3) states the reasons for the obligor's belief that there is an error. 15 U.S.C. §1666(a)(1) - (3).

If the consumer sends a timely notice, the creditor must then send the debtor written acknowledgment that the notice was received within thirty days of receipt. 15. U.S.C. § 1666(a)(A); *American Express Co. v. Koerner*, 452 U.S. 233, 235-37 (1981). Additionally, the creditor is required to investigate the disputed matter and either make timely corrections or send a timely written explanation of why the original statement was correct before attempting to collect the disputed amount. 15. U.S.C. § 1666(a)(B); *Koerner*, 452 U.S. at 235-37. The creditor must do either of those by the earlier of ninety days or two full billing cycles of the creditor after receipt of the notice. 15 U.S.C. § 1666(a)(B); *Burnstein v. Saks Fifth Ave. Co.*, 208 F. Supp. 2d 765, 776 (E.D. Mich. 2002).

### C.   Statute of Limitations under the Truth In Lending

The Truth in Lending Act, 15 U.S.C. § 1601 et seq., has a remedial purpose and should be liberally construed to "prevent 'unscrupulous and predatory creditor practices.'" *Jamerson v. Miles*, 421 F. Supp. 107, 110 (D.C. Tex. 1976) (citing *Littlefield v. Walt Flanagan & Co.*, 498 F.2d 1133 (10th Cir. 1974)); *see also McGowan v. King, Inc.*, 569 F.2d 845, 848 (5th Cir. 1978). The statute of limitations of the TILA states "any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Violations creating liability include failure to comply with any requirements of the statute. 15 U.S.C.A. § 1640(a).

In determining when the one-year statute of limitations should begin to run, the Fifth Circuit has followed the Rule 6(a) computation method for federal statutory time limits. *Lawson v. Conyers Chrysler, Plymouth, & Dodge Trucks, Inc.*, 600 F.2d 465, 466 (5th Cir. 1979). Rule 6(a) of the Federal Rules of Civil Procedure states "[i]n computing any period of time prescribed or allowed

5

by these rules . . . the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included . . . ." Fed. R. Civ. P. 6(a). TILA does have a tolling doctrine, but "[t]o clothe himself in the protective garb of the tolling doctrine, a plaintiff must show that the defendants concealed the reprobated conduct and despite the exercise of due diligence, he was unable to discover that conduct." *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986) (citing *In Re Beef Indus. Antitrust Litigation*, 600 F.2d 1148 (5th Cir. 1979)).

    **D.**    **Genuine Issue of Material Fact**

        **1.**    **The Letter**

Viewing all the evidence in favor of Plaintiff, there is a genuine issue of material fact regarding the letter concerning Garner's December 2003 billing statement. Garner has produced a letter, dated January 12, 2004 (Dkt. No.68, Exhibit R), that includes his name, the account number, the disputed amount, the belief that there was a billing error and the reason he believed there was an error. Additionally, Garner included copies of the certified mail return receipt dated January 12, 2004. (Dkt. No. 68, Exhibit S). Despite MBNA's argument that Garner's letter failed to meet the requirements established under the TILA, the letter does in fact meet the requirements stated in the TILA. In his January 12 letter, Garner requested clarification and documentary evidence to explain the extension of credit offered by MBNA, which is part of the billing error provision under the TILA §1666(b)(2). Therefore, the letter dated January 12, 2004, meets the TILA requirements sufficiently triggering the requirement for MBNA, the creditor, to respond within thirty days. MBNA would also then be required to investigate and send an explanation regarding the alleged discrepancy within two full billing cycles or ninety days, whichever came first. Viewing the evidence in the light most

6

favorable to Plaintiff, the letter meets the TILA requirements for notice of a billing dispute, so there remains still a genuine question as to whether MBNA actually received the notice.

### 2. Statute of Limitations

The TILA's one-year statute of limitations begins to run on the date of the alleged violation. After a creditor receives a written dispute of an account, the creditor has to investigate and send its findings or corrections to the customer by the earlier of ninety days or 2 billing cycles. In this case, Plaintiff alleges that MBNA failed to take corrective action regarding the December 2003 billing dispute noticed in a letter he sent on January 12, 2004. Because MBNA was obligated to respond to Plaintiff's letter by either the lessor of 90 days or two billing cycles from the date it received the letter disputing the December bill, the violation would have occurred at the earlier of ninety days or two full billing cycles after receipt of the notice.

MBNA produced three documents reflecting the billing cycles from December 13, 2003 to March 12, 2004 for Garner's account. (Dkt. No. 69, Exhibit B). The billing cycles ran from January 15, 2004, to February 12, 2004; then from February 13, 2004, to March 12, 2004; then from March 13, 2004 to April 12, 2004. Therefore, in order to determine when the alleged violation occurred the Court must first determine when MBNA received Plaintiff's letter and when the second billing cycle after receipt of the letter ended.

In its Second Motion for Summary Judgment MBNA *assumes* that it received Plaintiff's letter on January 15, 2004. Based on that assumption, the next two billing cycles would end on March 12, 2004, and Plaintiff missed the statute of limitation deadline by 24 days. However, the Court cannot make the same assumption that MBNA urges. Viewing the evidence in the light most favorable to Plaintiff, MBNA could have received Plaintiff's letter on January 16, 2004, just 4 days

7

after he sent it. If MBNA received the letter on January 16, the next two billing cycles would end on April 12, 2004 – less than one year before Plaintiff filed suit on April 6, 2005. Thus, the statute of limitations does not bar Garner's suit.

### III.  Conclusion

For the foregoing reasons, Defendant MBNA's Second Motion for summary Judgment is **DENIED.**

**IT IS SO ORDERED**

**ENTERED: January 18, 2007**

_____
**HON. JERRY BUCHMEYER
SENIOR UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS**